UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY WILLIAMS, #507451,

                     Petitioner,                             Case No. 12-cv-14285

v.                                              Honorable Thomas L. Ludington

CATHERINE BAUMAN,

                     Respondent.

_____/

**OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY
JUDGMENT, DISMISSING THE PETITION FOR WRIT OF HABEAS CORPUS, AND
DENYING A CERTIFICATE OF APPEALABILITY AND PERMISSION TO PROCEED
*IN FORMA PAUPERIS* ON APPEAL**

Petitioner Anthony Williams filed an application for a writ of habeas corpus pursuant to

28 U.S.C. § 2254. Petitioner was convicted after a bench trial in the Wayne Circuit Court of first-

degree home invasion, Mich. Comp. Laws § 750.110, armed robbery, Mich. Comp. Laws §

750.529, felonious assault, Mich. Comp. Laws § 750.82, and possession of a firearm during the

commission of a felony. Mich. Comp. Laws § 750.227b. He was sentenced as a third-time

habitual felony offender to concurrent 20-to-40 year sentences for the home invasion and armed

robbery convictions, 4-to-8 years for the assault conviction, and a consecutive two years for the

firearm conviction. The petition claims that: (1) Petitioner was denied the effective assistance of

trial counsel because his trial counsel failed to object to the scoring of the sentencing guidelines,

failed to object to the bias of the trial judge, and failed to object to a suggestive identification

procedure; (2) appellate counsel was ineffective for failing to raise meritorious claims during

Petitioner's direct appeal; and (3) the Michigan Supreme Court failed to consider a complaint for

superintending control. Respondent filed a motion for summary judgment, asserting that the

petition was filed after expiration of the one-year statute of limitations. Petitioner filed a response to the motion asserting entitlement to equitable tolling. For the reasons set forth herein, the petition fails to comply with the one-year statute of limitations set forth at 28 U.S.C. § 2244(d) and, alternatively, is without merit. Respondent's summary judgment motion will be granted and the petition will be denied. The merits of the petition, however, will also be addressed. A certificate of appealability and permission to proceed on appeal *in forma pauperis* will be denied.

## I.

## A.

The charges against Petitioner involved allegations that he and another person forcibly entered a home on Heyden Street in Detroit armed with a handgun and stole a television. Petitioner's counsel did not deny that the incident occurred, but contested that Petitioner was armed with a gun or knew that anyone was home when he broke into the house.

At trial, Marcel Clark testified that he left his home on Heyden Street at approximately 4:30 a.m. on January 4, 2008. Mr. Clark was going to work that morning, and his wife and three children were asleep when he left. His children included fifteen-year-old Elijah Watters, ten-year-old Malik Clark, and eight-year-old Brianna Clark.  Brianna and Malik were asleep in their bedrooms on the main floor of the house, and Elijah was asleep in a room in the basement. Mr. Clark activated the alarm system when he left.

Mr. Clark's wife, Damika Clark, left for work at approximately 6:55 a.m. that morning. When she departed, she turned the lights off and locked and secured the doors. The alarm system was activated for the doors and windows. The children were still in their beds when she left. The

children were still on vacation from school, and fifteen-year-old Elijah was left in charge of the younger children.

According to the allegations in the petition, prior to seven-year-old Brianna Clark's testimony, the trial judge gave her a piece of candy, sat her on his lap, and let her bang the gavel. Brianna testified that she was awakened by a loud alarm during the morning of January 4, 2008. Her bedroom was right next to her brother Malik's bedroom, Elijah slept in the basement, and their parents' bedroom was upstairs. Initially, Brianna believed that her father had returned from work and she stayed in her bed. Then she saw two unfamiliar men with guns in the hallway. One of the men was standing at her door with a gun pointed in the direction of her head. Briana was scared because she thought he was going to shoot her, but he did not say anything. Brianna identified that person as Petitioner. She described the gun as a black "police gun."

The two men went upstairs to Brianna's parents' bedroom. Brianna went to Malik's bedroom, but he was asleep. She then went down to Elijah's bedroom and told him about the intruders and that they had a gun.

Elijah attempted to call their parents and wake Malik. Brianna remained in the basement, and Elijah told her to leave the home when it was clear. Brianna believed that the intruders were in her home for approximately 20 minutes. From the top of the basement staircase, Elijah observed one of the intruders signal to the other to depart the home, and he watched the other man walk out of the house. Elijah was not able to see the faces of the intruders or whether they were carrying weapons.

Scott Hall was working as a telephone repairman in the area of Heyden Street on the date of the incident. He observed two men walking down the street carrying a television. The men walked around the corner and into the backyard area of a second house. When they came back,

the television was not with them. One of the men got into a car, began driving, and got into an accident. Despite the accident he continued driving. The other person was hopping over fences and was chased by police, who had just arrived on the scene. Hall could not identify either of the men.

Officer Michael Crosby was directed to the area where the two men were seen with the television. He followed fresh footprints in the snow to a garage. Petitioner ran out of the garage and refused to stop when ordered. The officer chased Petitioner and eventually apprehended him.

Petitioner was wearing clothing described by the witness who reported the home invasion. After arresting Petitioner, Officer Crosby found the television taken from the Clark residence in a box in the garage. The second suspect was never apprehended. In the course of canvassing the area for any evidence in connection with the home invasion, officers found a pair of red knit gloves and a pry bar. These items were found outside of the home along a fence line adjacent north of the garage where the television was located. Officers searched for a weapon, but they did not find one.

Mr. Clark testified that at approximately 12:15 or 12:30 p.m. on the day of the incident, he received a phone call from his security alarm company. He went home and met his kids who were with Mr. Clark's cousin at a neighbor's house. The children were upset. Mr. Clark observed that his side door had been pried open and damaged, which caused the alarm system to be activated. Mr. Clark noticed that his television was missing from his upstairs bedroom. Mr. Clark notified the police that had responded to the area and identified his television that was recovered. Neither Mr. nor Mrs. Clark knew Petitioner.

Mr. Clark described his daughter as a good child with no vision problems. From her bedroom, Brianna would be able to see someone coming up and down the stairs.

The defense theory conceded that Petitioner broke into the house, but asserted that the prosecutor did not prove that he was armed given the young age of the eyewitness and the fact that no weapon was found. Defense counsel also argued that the conduct of the perpetrators indicated that they must have believed that the house was unoccupied when they entered. Nevertheless, the trial court found Petitioner guilty as charged.

At the sentencing hearing, Petitioner admitted that he broke into the home, stating: "I would like to apologize for the home invasion, especially to the little girl and the family who went through with this. But your Honor . . . I didn't have no gun." Sent. Tr. P 10.The Court sentenced Petitioner to 25-to-50 years for the home invasion and armed robbery charges and 5-to-15 years in prison for the felonious assault charge, to be served consecutively to the mandatory term of 2-years in prison for felony firearm. He was sentenced as a fourth habitual offender.

Petitioner then filed a direct appeal. His appellate counsel also filed a motion for remand, seeking a new sentencing hearing on the grounds that Petitioner was not a fourth-time habitual felony offender. The motion was granted, and Petitioner was re-sentenced as indicated above.

Petitioner's appellate counsel then filed an appellate brief, asserting that the evidence presented at trial was insufficient to sustain his convictions for armed robbery, felonious assault, and felony-firearm. On November 5, 2009, the Michigan Court of Appeals issued an unpublished opinion affirming Petitioner's conviction. *People v. Williams*, No. 285692, 2009 WL 3683316, at *1, 2 (Mich. Ct. App. Nov. 5, 2009).

**B.**

Petitioner then filed an application for leave to appeal in the Michigan Supreme Court. On March 29, 2010, the Michigan Supreme Court denied the application. *People v. Williams*, 779 N.W.2d 814 (Mich. 2010) (table).

On June 13, 2011, Petitioner filed a motion for relief from judgment in the trial court, raising what now form his habeas claims. The trial court denied this motion on October 14, 2011. On April 18, 2012, Petitioner filed a delayed application for leave to appeal in the Michigan Court of Appeals, along with a motion to waive fees. On May 9, 2012, the Michigan Court of Appeals issued an order denying the motion to waive fees, and it directed Petitioner to pay a reduced fee of $27 within 21 days of the order. Petitioner asserts in an affidavit that he did not receive this order, but that if he would have, he would have paid the reduced fee. He further alleges that he signed a form with Michigan Department of Corrections that required that his legal mail be opened in his presence. He asserts that because the State has not produced the corresponding mail log entry for the Court of Appeals order, it has not shown that he received the order.

On June 28, 2012, the Michigan Court of Appeals dismissed Petitioner's application for failure to pay the filing fee. Petitioner does not allege that he did not receive this order. In fact, Petitioner filed a motion for reconsideration of the dismissal order, but it was denied as untimely on August 24, 2012.

In the meantime, Petitioner filed the instant habeas petition on September 26, 2012. The petition raises three claims:

    I. Petitioner was denied the effective assistance of trial counsel.

        A. Trial counsel failed to object to the scoring of the sentencing guidelines.

B. Trial counsel failed to object to the bias of the trial judge.

C. Trial counsel failed to object to a suggestive in-court identification procedure.

II. Petitioner was denied the effective assistance of appellate counsel for failing to raise the above ineffective assistance of trial counsel claims during Petitioner's direct appeal.

III. The Michigan Supreme Court erroneously denied Petitioner's complaint for superintending control as a late application for leave to appeal.

Realizing that he was never able to present the claims raised in his motion for relief from judgment in the state appellate courts, Petitioner moved to have this case stayed. Petitioner hoped to file a complaint for superintending control, asserting that his failure to receive the order denying his motion to waive fees entitled him to a renewed opportunity to pursue his appellate relief in the state courts. The Court granted the motion, and stayed the case.

Petitioner then filed a complaint for superintending control in the Michigan Supreme Court, seeking an order compelling the Court of Appeals to accept his late appeal. The Michigan Supreme Court apparently considered the filing as an untimely filed late application for leave to appeal, which was rejected on November 28, 2012.

After unsuccessfully pursuing relief in the state courts, Petitioner filed a motion to reopen his habeas case. Respondent subsequently filed a motion for summary judgment, asserting that the original habeas petition was filed after expiration of the one-year limitations period.

## II.

Respondent filed a motion for summary judgment, asserting that the petition was filed after expiration of the one-year statute of limitations. *See* 28 U.S.C. §2244(d). According to Respondent, the limitations period terminated when Petitioner failed to file a timely appeal from the trial court's order denying Petitioner's motion for relief from judgment. *See Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002). Petitioner rejoins that his

failure to timely appeal the order was as a result of the fact that he never received the order regarding the filing fee, an allegation that the State should be able to disprove if it complied with its procedures regarding the delivery of his legal mail. Petitioner argues that he is therefore entitled to equitable tolling, rendering his petition timely filed. *See Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010).

Under the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Sanders v. Freeman*, 221 F.3d 846, 851 (6th Cir. 2000). The moving party bears "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable fact finder could return a verdict in his or her favor. *Sanders*, 221 F.3d at 851. The summary judgment rule applies to habeas proceedings. *Redmond v. Jackson*, 295 F. Supp. 2d 767, 770 (E.D. Mich. 2003).

## III.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year statute of limitations applies to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one-year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

- 8 -

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Absent equitable tolling, a petition for writ of habeas corpus must be dismissed where it has not been filed before the limitations period expires. *See* 28 U.S.C. § 2244(d)(1); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004).

The statute of limitations began to run in this case when Petitioner's conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). None of the other potential starting points apply. Petitioner does not assert that his claims are based on previously unavailable facts or law, nor does he allege that the state created an external impediment preventing him from filing his petition. *See* §§ 2244(d)(1)(B)-(D).

"Direct review," for purposes of subsection 2244(d)(1)(A), concludes when the availability of direct appeal to the state courts and to the United States Supreme Court has been exhausted. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009). Here, the Michigan Supreme Court denied leave to appeal on March 29, 2010. Direct review ended 90 days later, on June 28, 2010, when the time expired for Petitioner to file a petition for writ of certiorari in the United States Supreme Court. *See Gonzalez v. Thaler*, 132 S.Ct. 641, 181 L.Ed.2d 619 (2012). The statute of limitations began running on the next day, June 29, 2010, and was set to expire one year later.

The running of the statute of limitations is tolled, however, when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent

- 9 -

judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181-82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed"). Petitioner filed a motion for relief from judgment on June 13, 2011, after 349 days of the limitations period past, starting a period of tolling under this section.

The question here is when this period of tolling ended. An application for post-conviction relief is "properly filed" within the meaning of this section–and therefore acts to toll the limitations period–when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, which usually prescribe "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." *Artuz*, 531 U.S. at 8. "If, for example, an application is erroneously accepted by the clerk of a court lacking jurisdiction, or is erroneously accepted without the requisite filing fee, it will be pending, but not properly filed." *Id*. at 9.

Here, there is no question that while Petitioner's motion for relief from judgment was pending in the trial court, that it tolled the limitations period under §2244(d)(2). This means that the limitations period was tolled at least from June 13, 2011, until October 14, 2011, when the trial court denied the motion. Tolling also occurs between the denial of the motion for relief from judgment in the trial court and the filing of the application for leave to appeal in the Michigan Court of Appeals, so long as the filing is timely under state law. *See Carey v. Saffold*, 536 U.S. 214, 219 (2002).

Here, Petitioner filed a timely application for leave to appeal in the Michigan Court of Appeals on April 18, 2012. Thus, the limitations period also continued tolling from the denial of his motion for relief from judgment until at least this date.

Then, on May 9, 2012, the Michigan Court of Appeals issued an order denying Petitioner's motion to waive fees and directed Petitioner to pay a partial fee by May 30, 2012. Petitioner never corrected the deficiency, and his application was dismissed for failure to pay the fee on June 28, 2012. Petitioner's subsequent motion for reconsideration was denied as untimely on August 24, 2012. And then his application for leave to appeal filed in the Michigan Supreme Court was rejected as untimely on November 28, 2012.

Because Petitioner's appeal to the Michigan Supreme Court was untimely, under *Carey*, the limitations did not toll between the Michigan Court of Appeals June 28, 2012, dismissal of his appeal and the untimely filing of his appeal in the Michigan Supreme Court. That is, the limitations period began running on June 28, 2012, and ran until September 17, 2012, the date he signed his habeas petition and presumably placed it in the prison mail, a period of 81 days. But because Petitioner had already allowed 349 days to elapse on the limitations period, adding the two periods together, the habeas petition was untimely filed.

Petitioner's responds that he never received the May 9, 2012, deficiency order, and that if he had, he would have paid the reduced fee and his appeal would have been properly filed. For purposes this motion, the Court will accept this allegation as true. While the AEDPA statute of limitations is subject to equitable tolling in appropriate cases, *Holland v. Florida*, 130 S. Ct. 2549, 2560 (2010), a petitioner is entitled to equitable tolling only if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id*. at 2562 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Ignorance of the law is not a valid reason for equitable tolling, even for imprisoned pro se habeas petitioners. *Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005); *Winkfield v. Bagley*, 66 F. App'x 578, 583 (6th Cir. 2003).

- 11 -

However, even if Petitioner did not receive the deficiency order, he did receive the June 28, 2012, order of dismissal. And he has not explained why his motion for reconsideration of that order was untimely, or why his application for leave to appeal in the Michigan Supreme Court was untimely filed. So while Petitioner's argument may explain why his appeal to the Michigan Court of Appeals was never properly filed, and provide a justification for the statute of limitations to be tolled up to the date it was dismissed on June 28, 2012, it does not explain his failure to act diligently after that dismissal. Because Petitioner has not demonstrated any grounds for equitable tolling between June 28, 2012, and the date he filed the instant habeas petition, the petition was untimely filed and is subject to dismissal.

Lastly, the one year statute of limitations may be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in *Schlup v. Delo*, 513 U.S. 298 (1995). *See Souter v. Jones*, 395 F.3d 577, 599-600 (6th Cir. 2005). Petitioner's case falls outside of the actual innocence tolling exception enunciated in *Souter*, because he has neither alleged nor presented any new, reliable evidence to establish that he was actually innocent of being a third time habitual felony offender. *See Ross v. Berghuis*, 417 F.3d 552, 556 (6th Cir. 2005). For that reason, Respondent's motion for summary judgment will be granted and the petition will be dismissed as untimely. For the sake of completeness, however, the petition's merits will be considered.

**IV.**

AEDPA, which governs this case, "circumscribe[d]" the standard of review federal courts must apply when considering an application for a writ of habeas corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). As amended, 28 U.S.C. § 2254(d) permits a federal court to issue the writ only if the

- 12 -

state-court decision on a federal issue "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or it amounted to "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d) (1)-(2); *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998). Under that review standard, mere error by the state court does not justify issuance of the writ; rather, "the state court's [application of federal law] must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409, (2000) (internal quotes omitted)).

Additionally, this Court must presume that the state court's factual determinations are correct. 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous") (citation omitted).

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.
>
> . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

- 13 -

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Williams*, 529 U.S. at 409. The Court has explained that an unreasonable application of federal law is different from an incorrect application of federal law. Under that language, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

The Supreme Court has continued to emphasize the limited nature of this review. In its recent unanimous decision in *Harrington v. Richter*, 131 S. Ct. 770 (2011), the Supreme Court reiterated that the AEDPA requires federal habeas courts to review state-court decisions with "deference and latitude," and "[a] state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. at 785-86 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## A.

Petitioner first claims that his trial counsel was ineffective for: (1) failing to challenge the scoring of the sentencing guidelines; (2) failing to object to the bias of the trial judge; and (3) failing to object to a suggestive in-court identification procedure. The trial court denied these claims on the merits in its order denying Petitioner's motion for relief from judgment. Because this decision reasonably applied clearly established Supreme Court law, the claims are without merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner's counsel was ineffective.

First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel guaranteed by the Sixth Amendment. *Id*. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial. *Id*.

With respect to the performance prong, a petitioner must identify acts that are "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The Court's scrutiny of counsel's performance is viewed through a highly deferential lens. *Id*. at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id*. at 690. And it is the petitioner who bears the burden of overcoming the presumption that his counsel's actions constituted sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under Strickland, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

First, with respect to the scoring of the sentencing guidelines, the trial court considered Petitioner's objections to the scoring and determined that they were without merit. Opinion Denying Motion for Relief From Judgment, pp. 2-4. The trial court concluded: "Because defendant has not shown that his [Prior Record Variables] and [Offense Variables] were scored

incorrectly, it follows that defendant cannot show that counsel was ineffective for failing to object to the alleged scoring errors." *Id.* at 4.

Because the trial judge concluded that the scoring of the guidelines was correct as a matter of state law, Petitioner is unable to show that he was prejudiced by his counsel's purported ineffectiveness in failing to object in a different manner to the scoring of his sentencing guidelines. *See Coleman v. Curtin*, 425 F. App'x 483, 485 (6th Cir. 2011). That is, Petitioner has not shown that the state trial court judge would have been inclined to impose a lesser sentence if his counsel had raised the guideline issues. Petitioner is therefore unable to show that he was prejudiced by his counsel's purported ineffectiveness in failing to properly object to the scoring of his sentencing guidelines. *See Spencer v. Booker*, 254 F. App'x 520, 525-26 (6th Cir. 2007). This allegation of ineffective assistance of counsel is without merit.

Furthermore, the underlying issue: a challenge to state sentencing guidelines, is one that is not cognizable on habeas review. *See Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854 at *2 (6th Cir. Nov.19, 1993) (ruling that departure from state sentencing guidelines is a state law issue which is not cognizable on federal habeas review); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). Any error in scoring the offense variables and determining the guideline range does not merit habeas relief. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855,

860 (6th Cir. 2002). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

Next, Petitioner asserts that his trial counsel should have objected to the bias of the trial judge. As evidence of bias, Petitioner notes that the trial judge let the eight-year old victim bang the gavel and gave her candy before her testimony.

To succeed on a judicial bias claim, a habeas petitioner must "overcome a presumption of honesty and integrity in those serving as adjudicators." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). In the absence of any evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are "critical or disapproving of, or even hostile to, counsel, the parties, or their cases." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Petitioner must show that the trial court displayed a "clear inability to render fair judgment," or "a deep-seated favoritism or antagonism" that made fair judgment impossible. *Id*. at 551 and 555 (1994). The question is whether "there was bias, or such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite*, 376 U.S. 575, 588 (1964).

The trial court's effort to make the child witness more comfortable in the courtroom setting did not demonstrate any bias against Petitioner. The actions were not hostile towards him in any manner. *See, e.g.*, *United States v. Hoffman*, 626 F.3d 993, 999 (8th Cir. 2010) (district court's apology for the victims' having had to endure seeing defendant in the community evidenced sympathy and encouragement, not bias against the defendant). The complained of acts by the trial court are insufficient to overcome the presumption of honesty and integrity in those

- 17 -

serving as adjudicators. Any objection would have been futile, and the claim is therefore without merit.

Last, Petitioner claims that his counsel was ineffective for failing to object to a suggestive identification procedure. Specifically, Petitioner alleges that the eight-year old victim identified him at trial only when he was asked to stand up dressed in "jail-greens." He notes that no live lineup procedure was held before trial.

The Supreme Court has adopted a two-step approach for determining whether to exclude eyewitness identification testimony as a violation of due process in *Neil v. Biggers*, 409 U.S. 188 (1972), and *Manson v. Brathwaite*, 432 U.S. 98 (1977). The court must first assess whether the identification was unnecessarily suggestive and then assess whether "under all the circumstances, that suggestive procedure gave rise to a substantial likelihood of irreparable misidentification." *Manson*, 432 U.S. at 107; *see Howard v. Bouchard*, 405 F.3d 459, 469 (6th Cir. 2005).

Petitioner does not allege that there was any pre-trial identification procedure that rendered the in-court identification unreliable. Rather, he claims that the in-court identification itself was unduly suggestive. Such a claim has been rendered invalid by recent Supreme Court precedent. In *Perry v. New Hampshire*, 132 S. Ct. 716, 726 (2012), the Court clarified that "[t]he Constitution . . . protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry*, 132 S. Ct. at 723. "Discrediting unreliable evidence at trial, rather than excluding it completely, has thus been the traditional method through which a defendant can ensure that the jury can accurately determine the facts." *Howard v. Warden, Leb. Corr. Inst.*, 519 F. App'x 360, 366 (6th Cir. 2013).

- 18 -

In *Perry*, the Court held that "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Id*., 132 S. Ct. at 724 (citations omitted). "When no improper law enforcement activity is involved," reliability is better tested with tools such as "the presence of counsel at post-indictment lineups, vigorous cross-examination, protective rules of evidence, and jury instructions on both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt." *Id*., 132 S. Ct. at 721. That is, if there is no showing that police employed an unduly suggestive procedure to obtain an identification, the unreliability of the identification should be exposed through the trial process, not suppression of the identification testimony. *Howard*, 519 F. App'x at 367.

Here, because there is no claim of improper pre-trial police activity regarding the witness's identification of Petitioner, his due process rights were not implicated by the in-court identification–no matter how unreliable it was. Therefore, his counsel had no valid objection to make, and he was not ineffective for failing to have made one.

Accordingly, all three of Petitioner's ineffective assistance of trial counsel claims are without merit.

**B.**

Petitioner's next claim asserts that he was denied the effective assistance of appellate counsel when his attorney failed to raise the above claims during his direct appeal. However, because the underlying ineffective assistance of trial counsel claims lack merit, this Court must reject any independent ineffective assistance of appellate counsel claim raised by Petitioner. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks

merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

## C.

Finally, Petitioner asserts that he was wrongfully denied post-conviction review in the state courts when the Michigan Supreme Court mischaracterized his complaint for superintending control as an untimely application for leave to appeal. This claim is not cognizable. There is no federal constitutional requirement that states provide a means of post-conviction review of state convictions. Therefore, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition. *Williams-Bey v. Trickey*, 894 F. 2d 314, 317 (8th Cir. 1990); *see also Kirby v. Dutton*, 794 F.2d 245, 247-248 (6th Cir. 1986) (defendant's claims that he was denied the effective assistance of counsel, due process, and equal protection in state's post-conviction proceedings were unrelated to his detention and could not be brought in a federal habeas corpus petition). Petitioner's third claim is therefore also without merit.

## V.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(A); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to

proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id*. at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court will also deny Petitioner permission to proceed on appeal *in forma pauperis*. *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002); 28 U.S.C. § 1915(a)(3); Fᴇᴅ. R. Aᴘᴘ. P. 24 (a).

## VI.

Accordingly, it is **ORDERED** that Respondent Bauman's motion for summary judgment, ECF No. 11, is **GRANTED**.

It is further **ORDERED** that the petition for writ of habeas corpus, ECF No. 1, is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**.

It is further **ORDERED** that permission to proceed in forma pauperis on appeal is **DENIED**.

Dated: December 22, 2014                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Anthony Williams #507451 at Alger Maximum Correctional Facility, N6141 Industrial Park, Drive, Munising, MI 49862 by first class U.S. mail on December 22, 2014.

                    s/Tracy A. Jacobs
                    TRACY A. JACOBS